UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARTHA RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-4592 |
| | § | |
| FULTON FRIEDMAN & GULLACE, | § | |
| LLP, et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court are Defendant Midland Credit Management, Inc.'s ("MCM")

Motion to Dismiss for Failure to State a Claim (Doc. No. 24), Defendant Midland Funding,

LLC's ("Midland Funding") Motion to Dismiss for Failure to State a Claim (Doc. No. 25), and

Defendant Encore Capital Group, Inc.'s ("Encore") Motion to Dismiss for Failure to State a

Claim (Doc. No. 26).  After considering the parties' filings, all responses and replies thereto, and

the applicable law, the Court finds that the Defendants' Motions should be granted.

**I.     BACKGROUND**

In this putative class action,[1] Martha Rodriguez ("Rodriguez" or "Plaintiff") sues Fulton,

Friedman & Gullace, LLP ("Fulton"), MCM, Midland Funding, and Encore[2] for alleged

---

[1] Plaintiff's Amended Complaint, styled as "Plaintiff's First Amended Class Action Complaint"
(Doc. No. 15), sets out allegations ostensibly satisfying Federal Rule of Civil Procedure 23.
(Am. Compl. ¶¶ 73-90.)  However, no class has been certified to date.  For the purposes of
resolving these motions, the Court will analyze the allegations as though they were asserted by
Plaintiff individually.
[2] The Court will refer to Encore, MCM, and Midland Funding collectively as "the Encore
Defendants."  The Court will refer to all of the defendants in this case, which include the Encore
Defendants and Fulton, collectively as "Defendants."

violations of the Fair Debt Collection Practices Act ("FDCPA")[3] and the Texas Debt Collection Practices Act ("TDCPA").[4]  (Am. Compl. ¶ 1.)

Plaintiff's Amended Complaint makes numerous allegations about the Encore Defendants' general course of conduct.  (Am. Compl. ¶¶ 32-67.)  They include:  That Encore is engaged in the business of purchasing deeply discounted charged-off consumer debt portfolios.  (Am. Compl. ¶ 32.)  Encore manages the collection of debt it has purchased through subsidiary agencies.  (Am. Compl. ¶ 32.)  MCM and Midland Funding are wholly owned subsidiaries of Encore.  (Am. Compl. ¶¶ 23, 28.)  Midland Funding holds title to the purchased portfolios.  (Am. Compl. ¶¶ 24, 41.)  Pursuant to a servicing agreement, MCM is responsible for servicing the collection of debts owned by Midland Funding.  (Am. Compl. ¶ 45.)  The servicing agreement grants MCM significant authority to manage the collection of accounts to which Midland Funding holds title.  (Am. Compl. ¶ 46.)  Additionally, Encore generally outsources, in accordance with a written collection agreement, the collection of accounts where it appears the debtor is able but unwilling to pay.  (Am. Compl. ¶ 48.)  The collection agreements typically place accounts with law firms "such as" Fulton.  (Am. Compl. ¶ 49.)  The collection agreement governs the manner in which the law firms are to conduct collection activities.  (Am. Compl. ¶ 50.)  MCM has sole and absolute discretion to modify the procedures set out in the collection agreement.  (Am. Compl. ¶ 51.)  MCM also provides training manuals to firms that collect debt on its behalf.  (Am. Compl. ¶ 62.)  Additionally, Encore manages and exercises control over every aspect of the collection process, including outsourcing.  (Am. Compl. ¶ 63.)

---

[3] 15 U.S.C. § 1692 *et seq.*
[4] Tex. Fin. Code § 392.001 *et seq.*

This case arises out of Plaintiff's alleged default on a debt owed to Bank of America. (Am. Compl. ¶¶ 5, 6, 68.)  Plaintiff's claims are based on: 1) two collection letters that were mailed to her and 2) a phone call placed to her.

On or about December 24, 2010, MCM sent Plaintiff two substantially similar letters ("December 24 letters" or "letters") attempting to collect on this debt.  (Am. Compl. ¶¶ 68, 69.)[5] Plaintiff alleges only that MCM mailed these letters "in connection with the collection of an alleged debt on behalf of Midland Funding and Encore."  (Am. Compl. ¶ 68.)

The letters indicate that Midland Funding is the owner of Plaintiff's Bank of America debt and MCM is the servicer.  (Am. Compl. ¶ 69.)  The letters do not mention Encore.  (Am. Compl. ¶ 69.)  They warn that MCM is considering forwarding the account to an attorney if the recipient takes no action by February 2, 2011.  (Am. Compl. ¶ 69.)  However, the letters also specifically state that the account will not be forwarded to an attorney before the expiration of the time period described in a notice contained on the reverse side of the letters.  (Am. Compl. ¶ 69.)

At the bottom of the first page, in bold, all capital typeface, the letters provide the following: "**NOTICE: PLEASE: SEE REVERSE SIDE FOR IMPORTANT DISCLOSURE INFORMATION**".  (Am. Compl. ¶ 69.)  The reverse side is printed in smaller font.  (Am. Compl. ¶¶ 102, 106; Doc No. 28.)  The first line on the reverse side reads "Important Disclosure Information."  (Am. Compl. ¶ 106.)  Immediately below that is a text box notifying the recipient that the letter is "a communication from a debt collector," that it is "an attempt to collect a debt," and that "[a]ny information obtained will be used for that purpose."  (Am. Compl. ¶ 106.)  Below the text box is information relating to Plaintiff's particular debt.  The letters again indicate, in

---

[5] An image of a portion of one of the letter is included in the Amended Complaint.  (Am. Compl. ¶ 69.)  MCM has filed a duplicate of the complete letter.  (Doc. No. 28.)

bold, capital typeface, the source of the debt and, in bold, the amount of the debt.  (Am. Compl. ¶ 106.)  Thereafter, the letters provide a number of additional legal disclosures.  They warn that the debt will be presumed valid unless the recipient notifies MCM within 30 days after receipt of the notice that the debt is disputed.  (Am. Compl. ¶ 106.)  If the recipient timely notifies MCM that the debt is disputed, MCM will obtain verification of the debt or a copy of the judgment and will mail a copy of such verification or judgment to the recipient.  (Am. Compl. ¶ 106.)  If the recipient requests in writing within 30 days after receipt of the notice the name and address of the original creditor, MCM will provide that information.  (Am. Compl. ¶ 106.)  Finally, MCM advises the recipient that even if she makes a payment within 30 days after receiving the notice, she still has the remainder of the 30 days to exercise the previously described rights.  (Am. Compl. ¶ 106.)  Following these disclosures, the letters contain a warning about possible credit bureau reporting, which is preceded by an asterisk.

Thereafter, the notices provide several addresses at which MCM may be contacted.  (Am. Compl. ¶ 106.)  The first address provided is: MCM Credit Reporting Department, 8875 Aero Drive, Suite 200, San Diego, CA 92123.  (Am. Compl. ¶ 106.)  The letters advise, in all capital letters, that this address is "solely" for issues related to credit reporting of the account.  (Am. Compl. ¶ 106.)  Thereafter, using all capital, bold, underlined letters, the letters direct that payments be mailed to P.O. Box 60578, Los Angeles, CA 90060-0578.  (Am. Compl. ¶ 106.)  Finally, again using all capital, bold, underlined letters, the letters admonish that "correspondence, but no payments," can be mailed to 8875 Aero Drive, Suite 200, San Diego, CA 92123.  (Am. Compl. ¶ 106.)  This address is the same address as that provided for correspondence solely related to credit reporting, except that no department is specified.  (Am. Compl. ¶ 106.)

Additionally, Plaintiff alleges that, on or about May 19, 2011, Fulton called Plaintiff at her job and left the following voicemail: "This message is for Martha Rodriguez.  If you could place (sic) call the law firm of Fulton, Friedman & Gullace, we'd appreciate it.  That number is 1-800-869-2331.  1-800-869-2331.  Thank you."  (Am. Compl. ¶ 71.)  Fulton is registered with the state of Texas as a "third-party debt collector."  (Am. Compl. ¶ 10.)  Plaintiff alleges that this phone call was placed "in connection with the collection of an alleged debt on behalf of Midland Credit Management, Midland Funding and Encore."  (Am. Compl. ¶ 71.)  No other facts are pleaded connecting Fulton to the debt that Midland Funding holds title to and MCM services, or even connecting Fulton to the Encore Defendants to Fulton.[6]

Plaintiff seeks to recover on three "counts."   The first count alleges that Defendants used "false, deceptive or misleading representation or means" in connection with the collection of a debt in violation of 15 U.S.C. § 1692e(11) of the FDCPA.  Relief is sought against Defendants generally.  The second count alleges that Fulton failed to disclose that its communications were made in connection with the collection of a debt, in violation of Tex. Fin. Code § 392.304(a)(5) of the TDCPA.  It is not entirely clear whether Plaintiff's pleadings seek relief against all Defendants or only Fulton on this count.[7]  The third count alleges the December 24 letters

---

[6] As previously described, Plaintiff does allege that the Encore Defendants typically work with firms like Fulton.  Plaintiff also offers the unsupported assertion that Fulton, Midland Funding, MCM and Encore "acted jointly and in concert to collect a debt from Plaintiff . . . ."  (Am. Compl. ¶ 31.)

[7] Defendant MCM asserts that this claim is asserted against Fulton only.  (MCM Mot. to Dismiss ¶ 19-20, n.21.)  However, the Amended Complaint is less than clear on this point.  It alleges that Fulton, in "connection with collection of an alleged debt on behalf of Encore, Midland Funding and Midland Credit Management," placed the offending call in violation of the TDCPA.  (Am. Compl. ¶ 97.)  Plaintiff further prays for relief in the form of "[a]djudging that *Defendants* violated" the TDCPA.  (Am. Compl. ¶ 98.) (emphasis added).  Furthermore, in her Response, Plaintiff makes clear that she intended to assert her TDCPA claim against the Encore Defendants as well as Fulton.  (Resp. to Mot. to Dismiss 23-24.)

overshadow or are inconsistent with the disclosures mandated by 15 U.S.C. § 1692g(a), in violation of 15 U.S.C. § 1692g(b) of the FDCPA.

## II.     APPLICABLE LAW

### A.  Rule 12(b)(6)

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Twombly*, 550 U.S. at 556 n.3 ("Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief.").  That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*  A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff.  The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth.

*Iqbal*, 129 S. Ct. at 1950 (citation omitted).  The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'"  *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).  A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).  Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted."  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted); *Duke Energy Intern., L.L.C. v. Napoli*, 748 F. Supp. 2d 656 (S.D. Tex. 2010).

The Federal Rules of Civil Procedure provide that "leave (to amend the complaint) shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  "[G]ranting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (citation omitted).  The Court should generally "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *Id*.

### B.  The FDCPA

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692. To accomplish this purpose, the FDCPA regulates the type and number of communications a debt collector may have with a debtor. *Osborn v. Ekpsz*, LLC, 821 F. Supp. 859, 867 (S.D. Tex. 2011). In particular, Section 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and Section 1692g requires that debt collectors advise debtors of certain rights they have shortly after the initial communication.

### i. "Debt Collector" under the FDCPA

Generally, the FDCPA applies only to "debt collectors." *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000). The FDCPA defines "debt collector" to include "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).[8]

Under this definition, an assignee that acquires a debt after it is in default is a debt collector. *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003). Furthermore, even if a party does not personally communicate with the debtor, it may still be a debt collector under the FDCPA; it is "a party's general, not specific, debt collection activities [that] are determinative of whether they meet the statutory definition of a debt collector." *Kaltenbach v. Richards*, 464 F.3d 524, 528-29 (5th Cir. 2006); *Munoz v. Pipestone Fin., LLC*, 397 F. Supp. 2d 1129, 1133 (D. Minn. 2005).

Taking the facts in the light most favorable to Plaintiff, the Amended Complaint alleges sufficient facts to show that the Encore Defendants are debt collectors under the FDCPA. Encore

---

[8] The provision excludes several categories of persons, none of which is at issue here.

purchases debt portfolios of customers whose debts have gone into default.  (Am. Compl. ¶ 32.)

MCM and Midland Funding are wholly owned subsidiaries of Encore.  (Am. Compl. ¶¶ 23, 28.)

Midland Funding holds title to the portfolios that Encore acquires.  (Am. Compl. ¶¶ 24, 41.)

MCM manages and services the collection of debts purchased by Encore.  (Am. Compl. ¶ 45.)

Encore oversees every aspect of the collection process, including efforts to collect debt that have

been outsourced.  (Am. Compl. ¶ 63.)  Encore and MCM's management and oversight of the

collection process amount to regularly attempting to collect debts owed to another.  Similarly,

holding title to debt portfolios and collaborating with a servicer to collect debt, as Midland

Funding does, is, at a minimum, an indirect attempt to collect a debt owed to another.   All of

these entities are, therefore, collectively in the business of, "directly or indirectly," regularly

attempting to collect debts owed to another.

### ii.  FDCPA Standard

The FDCPA is a remedial statute.  *Hamilton v. United Healthcare of Louisiana, Inc.*, 310

F.3d 385, 390 (5th Cir. 2002).  In light of its remedial nature, courts should interpret the statute

liberally.  *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006).

In evaluating whether a communication between a debt collector and a consumer violates

the FDCPA, the communication must be viewed objectively from the perspective of either the

"least sophisticated consumer" or the "unsophisticated consumer."  *Taylor v. Perrin, Landry,*

*deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997).  The "least sophisticated consumer"

standard "serves the dual purpose of protecting all consumers, including the inexperienced, the

untrained and the credulous, from deceptive debt collection practices and protecting debt

collectors against liability for bizarre or idiosyncratic consumer interpretations of collection

materials."  *Id.*  The unsophisticated consumer standard is substantially similar, "except that it is

designed to protect consumers of below average sophistication or intelligence without having the standard tied to 'the very last rung on the sophistication ladder'." *Id.* (*citing Gammon v. GC Servs. Ltd. P'ship,* 27 F.3d 1254, 1257 (7th Cir.1994)).  The Fifth Circuit has explicitly declined to decide which of these standards to apply.  *Id.*; *see also Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004) (noting both standards); *Peter v. G.C. Servs. L.P.*, 310 F.3d 344, 349 n.9 (again opting not to decide which standard governs because "the difference between the standards is at most de minimus").  Under either standard, courts must assume that the consumer is "neither shrewd nor experienced in dealing with creditors."  *Goswami*, 377 F.3d at 495.  However, the least sophisticated consumer is not to be treated as "irrational [or] a dolt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010).

This Court will consider whether the Encore Defendants' conduct violates the FDCPA under either the "least sophisticated consumer" or the "unsophisticated consumer" standards. The Court declines MCM's invitation to apply a "reasonable consumer" standard.  (MCM Mot. to Dismiss ¶ 16.)  MCM wrongly claims that the Fifth Circuit has not decided that the "least sophisticated consumer" or "unsophisticated consumer" standards apply.  As discussed above, the Fifth Circuit has consistently held that one of these standards applies; it simply has not selected between them.  Furthermore, MCM cites only one concurring opinion that applies the "reasonable consumer" standard.  *See Gammon*, 27 F.3d at 1959 (Easterbrook, J., concurring).

## III.    ANALYSIS

### A.  FDCPA

#### i.   15 U.S.C. § 1692e

15 U.S.C. § 1692e provides in relevant part:

§ 1692e. False or misleading representation

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

Plaintiff's Amended Complaint rather unhelpfully alleges that "Defendants violated 15 U.S.C. § 1692e by failing to disclose during communications with Plaintiff that the communications are from a debt collector."  (Am. Compl. ¶ 93.)  The Amended Complaint does not explain how each of the defendants in this case violated 15 U.S.C. § 1692e.  However, Plaintiff's Amended Complaint does discuss two communications from a debt collector that may give rise to possible violations of Section 1692e.  First, Plaintiff identifies two substantially identical letters that were sent to Plaintiff by MCM allegedly on behalf of Encore and Midland Funding.  (Am. Compl. ¶ 68.)  Second, Plaintiff identifies a telephone call from Fulton that was allegedly placed in connection with the collection of a debt on behalf of the Encore Defendants.  (Am. Compl. ¶ 71.)

Taking the facts in the light most favorable to Plaintiff, the Court finds that no Section 1692e violation can be based on the letters sent to Plaintiff.  In a box, near the top of the reverse side of the letters, the following warning appears: "Please understand that this is a communication from a debt collector.  This is an attempt to collect a debt.  Any information obtained will be used for that purpose."  (Am. Compl. ¶ 106.)  This warning unambiguously conforms to the requirements of Section 1692e(11).  Thus, Plaintiff cannot possibly allege that any of the Encore Defendants violated Section 1692e(11) in these letters.

11

However, Plaintiff may be able to show that the Encore Defendants violated Section 1692e in the phone call Fulton placed to Rodriguez. Section 1692e(11) applies both to oral and written communications from debt collectors. 15 U.S.C. § 1692e(11). The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Courts have generally held that voicemail messages are communications under the FDCPA even if they do not mention the debt in the message. *Berg v. Merchs. Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1340-41 (S.D. Fla. 2008); *Foti v. NCO Fin. Sys.,* 424 F. Supp. 2d 643, 655-56 (S.D.N.Y. 2006) (holding that a voice mail message is a "communication" under the FDCPA); *Hosseinzadeh v. M.R.S. Assocs., Inc.,* 387 F. Supp. 2d 1104, 1115-16 (C.D. Cal. 2005) (same); *but see Biggs v. Credit Collections, Inc.*, No.CIV-07-0053-F, 2007 WL 4034997 *4 (W.D. Okla. Nov. 15, 2007) (ruling that a voice mail message by a debt collector was not a communication because it contained no information regarding a debt). This Court agrees with the majority of district courts that have ruled on the issue. In light of the remedial nature of the FDCPA, the better interpretation of "communication" includes even those voice mail messages that simply request that the consumer return the debt collector's call. The ultimate purpose of such a message is to communicate with the consumer about the debt. As such, the message itself qualifies as an indirect conveying of information about a debt.

Fulton's initial communication with Rodriguez did not contain any of the disclosures required by Section 1692e(11). Because Fulton is registered as a third-party debt collector with the state of Texas, it undoubtedly qualifies as a debt collector under the FDCPA. On these facts, Plaintiff has properly pleaded a violation of Section 1692e(11) by Fulton.

Rodriguez seeks however, to hold not only Fulton liable for this violation, but all of the Encore Defendants, presumably under a theory of vicarious liability. (Surreply to Mot. To Dismiss 9-10.) Although the Encore Defendants are correct that Plaintiff did not plead vicarious liability specifically in its Amended Complaint (Consol. Reply to Mot. To Dismiss ¶ 18.), the Court finds this omission to be irrelevant.[9] As discussed above, to survive a Rule 12(b)(6) motion, a complaint must allege sufficient facts that, if accepted as true, would "'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In other words, Plaintiff's pleadings need only contain enough facts to establish a basis for judgment. There is simply no requirement that Plaintiff plead her claims using specific phrases such as "vicarious liability." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 926 (9th Cir. 2001) (holding that, although Plaintiff did not "specifically state she was basing her claim against the [Defendant] on the doctrine of 'respondeat superior,' under the federal liberal pleading standards, [Plaintiff's] allegations establish a sufficient basis to assert a claim that the [Defendant] is liable under that doctrine."); *Moody Motor Co., Inc., v. Lloyd's of London, Inc.*, No 8:06CV751, 2008 WL 4631689, at * 2 (D. Neb. Oct. 17, 2008) (same).

Relatively little case law exists about whether a party can be held vicariously liable for another's violations of the FDCPA. However, several circuit courts have held that a party that is itself a debt collector may be held vicariously liable for the improper collection activities of those acting on its behalf. *See Pollice*, 225 F.3d at 404; *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994); *but see Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103,

---

[9] Furthermore, the Court notes that the Encore Defendants filed their Consolidated Reply eight days late without seeking leave of the Court; as such, the Court is not obligated to consider their Reply in the first place. *Ogbevoen v. Aramark Campus, Inc.*, No. H-04-3595, 2006 WL 1788430, at *1 (S.D. Tex. June 20, 2006). Nonetheless, in the interest of justice, the Court has considered the Encore Defendants' delinquent filing.

108 (6th Cir. 1996) (refusing to allow suit on the basis of vicarious liability against client, who was not a debt collector, for violations of the FDCPA by the client's attorney).  In *Pollice*, the Third Circuit explained that allowing a claim of vicarious liability against a debt collector is "a fair result because an entity that is itself a 'debt collector'—and hence subject to the FDCPA— should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf."  *Id.* at 405.  The Fifth Circuit has not ruled on the issue of whether a party can be held vicariously liable under the FDCPA for the debt collection practices of its agents.[10]  In light of the remedial purpose of the FDCPA, this Court finds the Third Circuit's reasoning persuasive, and agrees that a debt collector may be vicariously liable for violations of the FDCPA committed by its agents.

Nonetheless, Rodriguez's Section 1692e claims against the Encore Defendants must be dismissed as pleaded.  Rodriguez pleaded only that the phone call placed by Fulton was "in connection with the collection of an alleged debt on behalf of Midland Credit Management, Midland Funding, and Encore."  (Am. Compl. ¶ 71.)  This statement is nothing more than a conclusory allegation.  While Plaintiff pleads a plethora of facts that would allow a plausible inference that the Encore Defendants collaborate with firms "like" Fulton, Plaintiff fails to plead even once that the Encore Defendants actually outsource any debt collection efforts to Fulton. (Am. Compl. ¶¶ 49-67 (referring to the outsourcing practices of the Encore Defendants to firms

---

[10] In claiming the Fifth Circuit has suggested that derivative liability must "find its source outside the FDCPA," the Encore Defendants mischaracterize *Peter v. GC Services L.P.*  (Consol. Reply ¶ 21.)  In *Peter*, the Fifth Circuit was asked to decide whether GC Financial and DLS Enterprises, general partners in GC Services, could be held liable for the partnership's FDCPA violations.  *Peter v. GC Servs. L.P.*, 310 F.3d 344, 353 (5th Cir. 2002).  GC Financial and DLS Enterprises argued that they could not because they were not themselves debt collectors.  *Id.*  The Fifth Circuit held that whether they were debt collectors was irrelevant because the FDCPA does not limit their liability as general partners under partnership law.  *Id.*  *Peter* is silent on whether a debt collector could be vicariously liable for the FDCPA violations committed by its agent under the FDCPA.

"such as" and "like" Fulton).)  More specifically, the Amended Complaint never pleads that any of the Encore Defendants actually outsourced the collection of Plaintiff's debt to Fulton. Without any allegations connecting Fulton to the Encore Defendants with regard to Plaintiff's particular debt, the Court cannot infer anything more than a "sheer possibility" that Fulton's call pertained to the collection of the debt owned by Midland Funding; Fulton's call may well have been about an entirely different debt.  *Iqbal*, 556 U.S. at 678.

Furthermore, the Court cannot even infer that Encore had anything to do with *any* of the efforts to collect Plaintiff's debt.  The only facts Plaintiff pleads that connect Encore to her debt are: 1) that Midland Funding came to own the debt, 2) that MCM was the servicer, and 3) that the letters MCM mailed to Plaintiff were "in connection with the collection of an alleged debt on behalf of Midland Funding and Encore."  (Am. Compl. ¶ 68.)  Plaintiff fails to plead that Encore made the decision to acquire her particular debt.  Without these facts, Midland Funding may well have independently acquired Plaintiff's debt.  The allegations in the Amended Complaint again present the Court with only a "sheer possibility" that Encore had any connection to the collection of Plaintiff's debts.  *Iqbal*, 556 U.S. at 678.

However, had Plaintiff pleaded that Encore oversaw the decision to acquire Plaintiff's debt and place title with Midland Funding, with servicing to be provided by MCM in accordance with its general practices, and that the Encore Defendants then outsourced collection efforts to Fulton, Plaintiff would have easily cleared the Rule 12(b)(6) hurdle.  The Amended Complaint pleads enough facts to allow the Court to infer that the Encore Defendants are debt collectors, as necessary for a vicarious liability claim, and that Fulton violated the FDCPA.  *See Pollice*, 225 F.3d at 404; *Wadlington*, 76 F.3d at 108.  Plaintiff simply fails to plead that Encore acquired Plaintiff's debt and oversaw its collection pursuant to its general practices, and that the Encore

Defendants actually contracted with Fulton for the collection of Plaintiff's debt.  Accordingly,

Plaintiff's Section 1692e(11) claim against the Encore Defendants is dismissed without

prejudice.  Plaintiff has leave to amend her Complaint to allege the facts necessary to state a

Section 1692e(11) claim against the Encore Defendants.

### ii.  15 U.S.C. § 1692g

15 U.S.C. § 1692g provides in relevant part:

§ 1692g. Validation of debts

(a) Notice of debts; contents
Within five days after the initial communication with a consumer in connection
with the collection of any debt, a debt collector shall, unless the following
information is contained in the initial communication or the consumer has paid
the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice,
disputes the validity of the debt, or any portion thereof, the debt will be assumed to be
valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the
thirty-day period that the debt, or any portion thereof, is disputed, the debt collector
will obtain verification of the debt or a copy of a judgment against the consumer and
a copy of such verification or judgment will be mailed to the consumer by the debt
collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period,
the debt collector will provide the consumer with the name and address of the original
creditor, if different from the current creditor.

(b) Disputed debts
. . . Any collection activities and communication during the 30-day period may not
overshadow or be inconsistent with the disclosure of the consumer's right to dispute the
debt or request the name and address of the original creditor.

Plaintiff does not allege that the Encore Defendants failed to include any of the

disclosures required by 15 U.S.C. § 1692g(a).  Rather, Plaintiff alleges that the Encore

16

Defendants violated Section 1692g because several aspects of the December 24 letters overshadow or contradict the validation notices.  (Am. Compl. ¶¶ 102-107.)   First, Plaintiff argues that the location of the notices on the back of the letters, in small print is problematic. (Am. Compl. ¶ 102; Resp. to Mot. To Dismiss 19-20; Surreply 8-9.)   Second, Plaintiff claims that the formatting of the notices serves to obscure the Section 1692g disclosures.  (Am. Compl. ¶¶ 103-107; Resp. 20-23; Surreply 7-8.)   Plaintiff argues that because the letters indicate that "important disclosure information" is located on the back of the letter, the formatting of the reverse side of the letter, which begins with the words "Important Disclosure Information," followed by a text box containing only the Section 1692e disclosures and subsequent selective bolding of the source and amount of the debt, signals that the remainder of the reverse side is unimportant.  (Resp. 20-23; Surreply 7-8.)  Third, Plaintiff claims that the numerous contact addresses provided in the notice and the instructions about what type of mail can be sent to each address either contradict the notice requirements of Section 1692g by failing to provide *any* address to which a dispute may be directed or, in the alternative, the instructions are so unclear that they would leave the unsophisticated or least sophisticated consumer confused as to how to dispute her debt (Am. Compl. ¶ 105; Resp. 17-18; Surreply 3-5.)

Compliance with Section 1692g requires more than mere inclusion of the required validation notices set out in Section 1692g(a).  *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996).  The required disclosures must also "be set forth in a form and within a context that does not distort or obfuscate its meaning."  *Peter*, 310 F.3d at 348.  A debt collection notice is invalid if it "fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights."  *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998); *see also Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) (Posner,

C.J.)". . . [T]he unsophisticated consumer is to be protected against confusion whatever form it takes."). In evaluating whether a debt collector has complied with Section 1692g, courts must "not construe the disclaimer in isolation but must analyze whether the letter is misleading as a whole." *Gonzalez v. Kay*, 577 F.3d 600, 604 (5th Cir. 2009).

The Fifth Circuit has recognized that "the context and placement of [the] disclaimer is . . . important." *Gonzalez*, 577 F.3d at 607. Several courts have held that locating the notices on the reverse side of a letter without proper reference on the front side violates the FDCPA. *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *see also Ost v. Collection Bureau, Inc.*, 493 F. Supp. 701, 702-03 (D. N.D. 1980) ("If the debt collector wishes to place the validation of debt language on the back of its 'initial communication,' then some clear reference to that language must appear on the face of that document."). However, merely locating the Section 1692g notices on the reverse side of a letter, with proper reference, "while undesirable, does not engender confusion sufficient to state a claim under the FDCPA*." Zemeckis v. Global Credit & Collection Corp.,* 679 F.3d 632, 637 (7th Cir. 2011). In fact, numerous cases have held that placing Section 1692 disclosures on the reverse side of a debt collection letter is appropriate when there is a clear reference directing the recipient to review the reverse side. *See, e.g.*, *Sims v. GC Servs. L.P.*, 445 F.3d 959, 964 (7th Cir. 2006) (holding that placing Section 1692g notices on reverse side of communication, when the bottom of the first page contains all capital, bold, red typeface directing recipient to "see reverse side for important consumer information" does not violate the FDCPA); *Weber v. Computer Credit, Inc.*, 259 F.R.D. 33, 35-36, 40 (E.D.N.Y. 2009) (allowing placement of notices on reverse side of debt collector's communication).

Plaintiff's argument that placement of the disclosures on the reverse side of the letters violates the FDCPA fails. Plaintiff does not cite a single case in which the placement of the

notices on the reverse side of a communication violates the FDCPA in spite of a clear reference directing the recipient to review the back for important disclosures.  The boldface, all capital typeface reference in the December 24 letters is virtually indistinguishable from those that courts have consistently upheld.  *See Sims*, 445 F.3d at 964; *Weber*, 259 F.R.D. at 35-36, 40.  Even the least sophisticated consumer would notice and understand the directive to review the reverse side of the letter.

Nor can the fact that the notice was in slightly smaller font save Plaintiff's claim.  The Court agrees that "[t]he required notice might be 'overshadowed' just because it was in smaller or fainter print than the demand for payment."  *Bartlett*, 128 F.3d at 500; *see also Swanson v. S. Or. Credit Serv., Inc.,* 869 F.2d 1222, 1225-26 (9th Cir. 1988) (holding that communications was misleading to the least sophisticated consumer in part because "debt validation notice is placed at the very bottom of the form in small, ordinary face type, dwarfed by a bold faced, underlined message three times the size which dominates the center of the page").  However, it cannot be the case that any difference in font size is actionable.  Here, the letters sent by MCM contained text on the front in Arial size 11, while the text on reverse was in Times New Roman 9.5.  Given the unambiguous directive on the first page to read the reverse for important disclosure information, it is hard to see how this minor difference in text size could mislead even the least sophisticated consumer into believing that the information on the back is unimportant.

Plaintiff's argument that the location of the words "Important Disclosure Information," the use of a text box for the Section 1692e disclosures, and the use of bold text for the source and amount of Plaintiff's debt overshadows the Section 1692g disclosures is similarly unavailing.  Many of the cases cited by Plaintiff involve letters with directives that contradict the required disclosure notices.  *See e.g.*, *Miller v. Payco-Gen. Am. Credits, Inc.,* 943 F.2d 482, 484 (4th Cir.

1991) (front of letter "demands 'IMMEDIATE FULL PAYMENT' and commands the consumer to 'PHONE US TODAY,' emphasized by the word 'NOW' emblazoned in white letters nearly two inches tall against a red background); *Russell*, 74 F.3d at 34 (message on front indicates that if plaintiff paid *within the next 10 days*, debt collector would not report negative information to credit agencies). These cases are not on point because the letters Rodriguez received explicitly stated that the account would not be forwarded to an attorney "until after the expiration of the time period described on the back of the letter." (Am. Compl. ¶ 69.) In fact, as MCM points out, the payment due date was actually even later than the 30-day dispute period allowed by the FDCPA. (MCM Mot. ¶ 37.) Furthermore, the notice on back of the letters further clarifies that even if the consumer makes a payment within the 30-day period, she still has the remainder of the 30 days to exercise the enumerated rights. (Am. Compl. ¶ 106.) Thus, the letters sent by MCM contain no contraction of the terms of the required disclosures.

Plaintiff rightly points out that a communication can still violate Section 1692g by "overshadowing" the mandatory disclosures. *Bartlett*, 128 F.3d at 500 ("[T]he implied duty to avoid confusing the unsophisticated consumer can be violated by contradicting or 'overshadowing' the required notice.). Plaintiff argues that, by placing the words "Important Disclosure Information" above a text box that does not contain the Section 1692g disclosures, and by using bolded text, Defendants suggest information that is neither in bold nor inside the box is unimportant, thereby overshadowing the Section 1692 disclosures. First, there is nothing to indicate that the words "Important Disclosure Information" refer only to the information in the text box, rather than the information on the whole page. The words are not, after all, within the text box; they are at the top of the reverse side. Second, the reserved use of a single, thin text box hardly suggests, even to the least sophisticated consumer, that the rest of the contents may be

disregarded.  The information in the text box is not in bold, or in larger font, or in a different color; it does not scream that it is the only relevant information on the page.  The Court does not disagree that putting information inside of a text box may signify to many readers that information contained therein is relatively more important than information outside the text box.  However, no court has ever held that assigning a marker of importance to information other than the Section 1692g disclosures automatically violates the FDCPA.  Significantly, the text box is not being used in a self-serving manner, such as to demand payment.  *Compare with Jarzyna v. Home Properties, L.P.*, 763 F. Supp. 2d 742, 748 (E.D. Pa. 2011) (finding violation of FDCPA where disclosure information was provided in much smaller font below bolded text demanding payment and a text box directing recipient to pay online).  Rather, the text box contains the required Section 1692e disclosures.  The Court finds no reason that debt collectors cannot highlight that information as being of particular salience.  Finally, for similar reasons, the limited use of bold to highlight the source and amount of Plaintiff's debt does not overshadow the rest of the Section 1692e disclosures.  To hold otherwise would be to impose an obligation on debt collectors to present all disclosure information required by the FDCPA in a precisely identical manner, a mandate nowhere found in the statute.

Finally, Plaintiff's contention that the notice does not provide contact information for consumers to dispute the debt, or, in the alternative, provides this information in a manner that would confuse the least sophisticated consumer, also fails to state a claim upon which relief can be granted.  Plaintiff argues that, because the address marked for correspondence generally is the same address that the notice previously indicated was for "issues relating solely to the credit reporting of your account," the Encore Defendants actually fail to provide an address for consumers to dispute their alleged debt, in direct contravention of Section 1692g.  (Resp. 17.)

However, Plaintiff fails to recognize one important detail about the address information provided. The address that is to be used solely for credit reporting correspondence, while the same street address as provided for correspondence generally, contains a specific department. The obvious conclusion is that credit reporting correspondence is to be sent to the specific department indicated in the first address, and all other correspondence, including dispute correspondence, is to be sent to the address marked "correspondence, but no payments" (Am. Compl. ¶ 106.) Although the presentation is not a model of clarity, even the least sophisticated consumer could easily reconcile this "contradiction." The unsophisticated consumer "isn't a dimwit. She may be uninformed, naïve, and trusting, but she . . . is capable of making basic logical deductions and inferences." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009); *see also Ellis*, 591 F.3d at 135 (explaining that the least sophisticated consumer is not "irrational"). A basic logical deduction is all that is required to understand that dispute correspondence goes to the third address provided, distinguishable from the first address by the lack of a specific department.

Considering the December 24 letters as a whole, Plaintiff's allegations that the Section 1692g disclosures are overshadowed by the form and content of the letters fails to state a claim upon which relief can be granted against any of the Encore Defendants. Accordingly, these claims are dismissed with prejudice.

### B.  TDCPA

Tex. Fin. Code § 392.304(a)(5) prohibits debt collectors from using fraudulent, deceptive, or misleading representations, including:

> (5) in the case of a third-party debt collector, failing to disclose, except in a formal pleading made in connection with a legal action:

(A) that the communication is an attempt to collect a debt and that any information obtained will be used for that purpose, if the communication is the initial written or oral communication between the third-party debt collector and the debtor; or

(B) that the communication is from a debt collector, if the communication is a subsequent written or oral communication between the third-party debt collector and the debtor…

Section 392.304(a)(5) of the TDCPA imposes identical disclosure requirements on third-party debt collectors as those imposed by Section 1692e of the federal FDCPA on all debt collectors.  *Compare* Tex. Fin. Code § 392.304(a)(5) *with* 15 U.S.C. § 1692e.  For the reasons discussed above, the Amended Complaint states a claim against Fulton.  The parties have cited no case law that discusses the availability of vicarious liability under the TDCPA, and this Court could find none.  However, courts have recognized that the TDCPA and the FDCPA "are very similar."  *Cox v. Hilco Receivables*, L.L.C., 726, F. Supp. 2d 659, 666 (N.D. Tex. 2010); *see also Bullock v. Abbott & Ross Credit Servs., L.L.C.,* No. A-09-CV-413 LY, 2009 WL 4598330, at *2 n. 3 (W.D. Tex. Dec. 3, 2009) ("The same actions that are unlawful under the FDCPA are also unlawful under the TDCA.").  This Court will therefore assume that claims under the TDCPA can be brought on a theory of vicarious liability in the same manner as under the FDCPA.

For the same reasons Plaintiff's Section 1692e claim against the Encore Defendants fails, Plaintiff's TDCPA against the Encore Defendants also fails.  Plaintiff has leave to amend her Complaint to allege the facts necessary to state a claim under Section 392.304(a)(5) of the TDCPA against the Encore Defendants.

## IV.    CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss is **GRANTED**.  Plaintiff's claim under 15 U.S.C. § 1692g against the Encore Defendants are **DISMISSED WITH PREJUDICE**.  Plaintiff's claims under 15 U.S.C. § 1692e and the TDCPA against the Encore Defendants are

**DISMISSED WITHOUT PREJUDICE** to filing an amended complaint within 20 days that will cure the deficiencies identified in this Order.

   **IT IS SO ORDERED**.

   **SIGNED** at Houston, Texas, on this the 28th day of August, 2012.

                _____
                KEITH P. ELLISON
                UNITED STATES DISTRICT JUDGE