IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARTHA RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-4592 |
| | § | |
| FULTON FRIEDMAN & GULLACE, | § | |
| LLP, MIDLAND FUNDING, LLC, | § | |
| MIDLAND CREDIT MANAGEMENT, | § | |
| INC., *and* ENCORE CAPITAL GROUP, | § | |
| INC. | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

### Issue Statement

Plaintiff Martha Rodriguez requests that this Court certify this action as a class action under Rule 23, on behalf of a class consisting of:

> All persons located in the State of Texas for whom, within one year before the date of the original complaint, FFG delivered a voice message in connection with an attempt to collect any consumer debt allegedly due Midland Funding where the voice message was substantially similar or materially identical to the voice message delivered to Ms. Rodriguez on or about May 19, 2011—in that it failed to provide the disclosures required by the FDCPA at Section 1692e(11) and by the TDCA at Section 392.304(a)(5).

Doc. 49, ¶ 61. In considering Ms. Rodriguez's request, this Court need address a single, straightforward issue:

> Rule 23 states that "a class action may be maintained" where a plaintiff satisfies the prerequisites imposed by Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—and the requirements imposed by Rule 23(b)—predominance and superiority. Here, FFG stipulated that "there are more than 5,000 ascertainable

1

members of the proposed class." The proposed class consists of consumers who assert that FFG delivered voice messages to them that failed to disclose that the communications were from a debt collector, in violation of both the FDCPA and the TDCA. The relevant questions of law and fact are therefore not only common, but nearly identical across the board. Should this Court certify Ms. Rodriguez's action as a class action?

**Standard of Review**

Rule 23 governs class certification. A district court has "substantial discretion" in determining whether to certify a class action. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998). When deciding a motion for class certification, a district court should take the substantive allegations contained in the complaint as true. *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 178 (1974); *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 498 (S.D. Tex. 2004). The party seeking certification "may rely on reasonable, common-sense assumptions and inferences to satisfy the requirements of Rule 23." *Kase v. Salomon Smith Barney, Inc.*, 218 F.R.D. 149, 152 (S.D. Tex. 2003) (citing *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981)). The court should not examine the merits of the case, but may look beyond the pleadings to determine whether the requirements of Rule 23 have been met. *Bell v. Ascendant Solutions Inc.,* 422 F.3d 307, 311-12 (5th Cir. 2005); *Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 570 (S.D. Tex. 2000).

"Rule 23 is a remedial rule which should be construed liberally to permit class actions…." *Longden v. Sunderman*, 123 F.R.D. 547, 551 (N.D. Tex. 1988); *see also Young v. Victoria Station*, No. 75-H-1590, 1977 WL 82, at *2 (S.D. Tex. Nov. 3, 1977) (in which court emphasized that it was guided "by the remedial policies underlying Rule 23 and the liberal interpretation to be afforded it in making pretrial class certifications") (citing 7 C. Wright & A. Miller, Federal Practice & Procedure § 1754 (1972)). In particular, certification should be granted "most liberally" where the amount of the individual recovery is small in relation to litigation costs.

*Bywaters v. United States,* 196 F.R.D. 458, 466 (E.D. Tex. 2000).

## Nature and Stage of the Proceeding

**I.     Ms. Rodriguez filed a class action, alleging violations of the FDCPA and the TDCA.**

Ms. Rodriguez filed her Original Complaint as an individual action against Defendants Fulton, Friedman & Gullace, LLP ("FFG"), Midland Funding, LLC ("Midland Funding"), Midland Credit Management, Inc. ("Midland Credit Management"), and Encore Capital Group, Inc. ("Encore"). *See* Doc. 1. She then filed a First Amended Class Action Complaint, *see* Doc. 13, and a Second Amended Class Action Complaint, *see* Doc. 49. In the Second Amended Class Action Complaint, which is the operative complaint, Ms. Rodriguez alleges only violations of the Fair Debt Collection Practices Act ("FDCPA") and the Texas Debt Collection Practices Act ("TDCA") based on a voice message that FFG delivered to her on May 19, 2011.

**II.     Discovery is ongoing.**

The parties have engaged in some written discovery, but have not completed written discovery. Ms. Rodriguez recently filed a motion to compel answers and responses to her discovery requests relating to FFG's net worth. *See* Doc. 89. The parties have not yet taken any depositions, but Ms. Rodriguez has scheduled a deposition of Allen Friedman under Federal Rule of Civil Procedure 30(b)(1) for May 21, 2013. She intends to schedule other depositions, including FFG's designated corporate representative(s) under Rule 30(b)(6) and FFG's debt collector employees. In addition, Defendants are currently scheduling Ms. Rodriguez's deposition. The discovery cutoff is September 11, 2013. Doc. 85, ¶ 5.

**III.     Ms. Rodriguez is filing this motion before the Court-ordered deadline because FFG served a Rule 68 offer of judgment on Ms. Rodriguez on May 6, 2013.**

This Court set the following briefing deadlines: motion for class certification due on October 2, 2013; response to motion for class certification due on October 23, 2013; and reply in support of

motion for class certification due on October 30, 2013. Doc. 85, ¶¶ 6, 7, 8. This Court also set a class certification hearing for November 8, 2013 at 1:30 p.m. *See* Doc. 86.

On May 6, 2013, however, FFG served a Rule 68 offer of judgment on Ms. Rodriguez. The Supreme Court recently held in *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013), that a collective action under the Fair Labor Standards Act ("FLSA") is not justiciable—*i.e.,* that no subject matter jurisdiction exists—when the lone plaintiff's individual claim becomes moot due to an unaccepted Rule 68 offer of judgment that would fully satisfy the plaintiff's claim. *Id.* at 1526-27. Granted, the Supreme Court distinguished collective actions under the FLSA from class actions under Rule 23. *Id.* at 1527-28. And granted, the Court also assumed, without deciding, that the unaccepted offer of judgment mooted the plaintiff's individual claim, *id.* at 1528-29—a "crucial premise" that four dissenting Justices hotly contest as "wrong, wrong, and wrong again." *Id.* at 1532-34 (Kagan, J., dissenting). Nevertheless, out of an abundance of caution, although Ms. Rodriguez strenuously asserts that the May 6, 2013 offer of judgment did not, and cannot, moot her claim, she is filing her class certification motion within the fourteen-day response period under Rule 68 to ward off the assertion of a mootness theory.

**Statement of Applicable Facts**

I. **Encore, Midland Funding, Midland Credit Management, and FFG are debt collectors who acted jointly to collect Ms. Rodriguez's consumer credit card debt.**

Ms. Rodriguez allegedly incurred a debt when she used a personal consumer credit card issued by Bank of America for consumer purchases such as groceries and gasoline. Doc. 49, ¶¶ 5, 6. Encore, Midland Funding, Midland Credit Management, and FFG are debt collectors. *Id.*, ¶¶ 8-20. Encore purchased a portfolio containing Ms. Rodriguez's debt and managed the collection of that debt through its subsidiary entities. *Id.*, ¶¶ 29-60. Midland Funding took title to the debt. *Id.*, ¶ 33. Midland Credit Management was responsible for managing and servicing the collection of the debt. *Id.*, ¶¶ 34-37.

4

Midland Credit Management outsourced collection of the debt to FFG. *Id.*, ¶¶ 38-40. Encore, Midland Funding, Midland Credit Management, and FFG acted jointly and in concert to collect the debts from Ms. Rodriguez and from each member of the proposed class of consumer debtors. *Id.*, ¶ 20; *see generally id.*, ¶¶ 21-60.

II. **In the course of those debt collection efforts, FFG left voice messages that violated the FDCPA and the TDCA.**

On or about May 19, 2011, in connection with its attempts to collect Ms. Rodriguez's alleged debt, FFG initiated a phone call to Ms. Rodriguez and left the following voice message:

> This message is for Martha Rodriguez. If you could please call the law firm of FFG, we'd appreciate it. That number is 1-800-869-2331. 1-800-869-2331. Thank you.

Doc. 49, ¶ 55. FFG left similar voice messages for the proposed class members in connection with its attempts to collect alleged debts from them. *See id.*, ¶ 56; Exhibit A, Transcript of Jan. 30, 2013 Status Conference at 12:6-8 (in which FFG stipulated and agreed that "there are more than 5,000 ascertainable members of the proposed class"); *see also* Argument, Section II.A.3 *infra* (compiling complaints through which plaintiffs assert that FFG violated the FDCPA and TDCA by delivering communications and voice messages without including the required disclosures). The voice messages all fail to disclose that they are communications from a debt collector and therefore violate Section 1692(e)(11) of the FDCPA and Section 392.304(a)(5) of the TDCA. *See* Doc. 49, ¶¶ 79-90.

**Argument**

I. **Class treatment of claims under the FDCPA is essential to its statutory structure.**

The FDCPA prohibits a catalog of activities in connection with third party debt collection. 15 U.S.C. § 1692 *et seq*. Congress "specifically addressed the potential for class action suits for violations of the FDCPA" by providing for class damages. *Barnett v. Experian Info. Solutions,* No. Civ.A. 2:00CV175, 2004 WL 4032909, at *4 (E.D. Tex. Sept. 30, 2004); 15 U.S.C. § 1692k(a)(2)(B). Understanding the importance of class actions to the private attorney

general enforcement scheme underlying the FDCPA, Congress took particular care to designate special remedies to unnamed members of class actions. "Specifically, the FDCPA provides that in the case of a class action class damages may be awarded in 'such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.'" *Eatmon v. Palisades Collection LLC*,[1] No. 2:08-CV-306-DF-CE, 2011 WL 147680, at *8 (E.D. Tex. Jan. 18, 2011) (quoting *Barnett,* 2004 WL 4032909, at *4). "This $500,000 in statutory damages under the FDCPA is only available in class actions." *Id.* Named plaintiffs can recover up to $1,000 in statutory damages and may also be apportioned a share of the class award. *Id.*

"Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action." *Weiss v. Regal Collections,* 385 F.3d 337, 345 (3d Cir. 2004).

## II. The class that Ms. Rodriguez seeks to represent is well suited for class treatment.

A party seeking class certification must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of the claims of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). It must then show that one of the following three conditions is satisfied: (1) the prosecution of separate actions would create a risk of: (a) inconsistent or varying adjudications, or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally

---

[1] Like this case, *Eatmon* involved claims brought under both the FDCPA and the TDCA. The court granted the motion for class certification.

applicable to the class; or (3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b). These requirements are readily satisfied in this case.

> **A. The class that Ms. Rodriguez seeks to represent is so numerous that joinder of all members is impracticable. In fact, FFG recently stipulated to numerosity and acknowledged a class of 5,000 ascertainable members.**
>
> > **1. In the Fifth Circuit, a class of 100 members or more generally satisfies the numerosity requirement.**

The numerosity prerequisite is met if the class is so numerous that joinder of all members is impracticable. *Zeidman*, 651 F.2d at 1034 (quoting Rule 23(a)(1)); *Neff v. VIA Metro. Transit Auth.,* 179 F.R.D. 185, 193 (W.D. Tex. 1998) (same). Joinder need not be impossible, merely impracticable. *Bywaters*, 196 F.R.D. at 466. "Impracticable" means "extremely difficult or inconvenient." *Stoffels v. SBC Commc'ns, Inc.*, 238 F.R.D. 446, 452 (W.D. Tex. 2006).

"The central considerations in determining whether plaintiff classes meet the Rule 23(a) numerosity requirement are the size of the class and whether joinder might be a practical and manageable alternative to class action litigation." *Id.* at 451. The plaintiff need not establish the exact number of potential members or identify the individual class members to meet the numerosity requirement. *Neff*, 179 F.R.D. at 193. The plaintiff may rely on reasonable inferences drawn from the available facts in estimating class size. *Bywaters*, 196 F.R.D. at 465-66.

A court should not rely solely on "sheer numbers"; instead, it should consider all relevant factors. *Id.* at 466. The practicality of joinder depends on such factors as the size of the class, its geographical dispersion, the ease of identifying class members by name and address, the facility of serving them, the nature of the action, and the size of each plaintiff's claim. *Stoffels*, 238 F.R.D. at 451; *Neff*, 179 F.R.D. at 193 (quoting *Zeidman*, 651 F.2d at 1038).

7

Although the number of members in a proposed class alone is not determinative of whether joinder is impracticable, a class of 100 or more is "within the range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir. 1999) (citing 1 *Newberg on Class Actions* § 3.05 (3d ed. 1992) for a rule that any class of 40 members or more "should raise a presumption that joinder is impracticable"); *Boykin v. GA-Pac. Corp.,* 706 F.2d 1384, 1386 (5th Cir. 1983) (finding that the numerosity requirement was not met by a class with 20 members, but "[c]ertainly" was by a class with 317); *see also Pawelczak v. Fin. Recovery Servs., Inc.*, 286 F.R.D. 381, 385 (N.D. Ill. 2012) (proposed class of at least 1,000 consumers was sufficiently numerous in action against debt collector for alleged FDCPA violations based on voice messages that failed to provide necessary disclosures).

Here, the class is so numerous that joinder of members is impracticable. Doc. 49, ¶ 63. The exact number of class members is unknown at this time and can be ascertained only through appropriate discovery. Doc. 49, ¶ 64. The class is ascertainable because FFG has stipulated that it is. Exh. A, Transcript at 12:6-8. And class members' names and addresses can be identified in Defendants' business records. Doc. 49, ¶ 65.

### 2. During a recent status conference, FFG conceded that there are 5,000 ascertainable class members and expressly stipulated to numerosity.

In fact, FFG's counsel conceded numerosity during the January 30, 2013 Status Conference: "As I understand it, the client – we do have a number of class size, which is several thousand folks; so, we wouldn't be disputing numerosity." Exh. A, Transcript at 11:10-12 (Mr. Wier); *see also id.* at 16:3 ("There's 5,000 class members….") (Mr. Wier). Ms. Rodriguez and FFG later reached an unequivocal stipulation on this point, and others, after adjourning to the

jury room at this Court's direction to resolve what they could.[2] With this Court's permission, Mr. Radbil read the stipulations into the record, stating in relevant part: "FFG stipulates and agrees that there are more than 5,000 ascertainable members of the proposed class." *Id.* at 12:6-8 (Mr. Radbil). When asked by this Court if he wanted to add anything to the parties' stipulations, FFG's counsel responded, "Everything that Mr. Radbil said is correct and we agree to…." *Id.* at 13:17-21 (Mr. Wier) (excepting only one statement about the production of a legal outsourcing firm manual).[3]

At the time of this conference, the Second Amended Class Action Complaint (filed Sept. 17, 2012) was operative, such that Ms. Rodriguez asserted only claims based on violative voice messages.[4] Thus, FFG necessarily stipulated that 5,000-plus people received messages substantially similar or materially identical to the May 19, 2011 message delivered to Ms. Rodriguez. This number is far in excess of the 100 or more generally required—and the 40 deemed adequate—in the Fifth Circuit.

### 3. Other lawsuits demonstrate that the FDCPA and TDCA violations at the heart of Ms. Rodriguez's complaint are not an isolated problem.

Even a cursory search reveals this lawsuit is not unique. The plaintiff in *Olinick v. Fulton, Friedman & Gullace, LLP*, No. 6:11-cv-71 (W.D. Tex.), asserted claims under Sections 1692d(6) and 1692e(11) of the FDCPA—and under the TDCA—based on improper voice messages. Doc. 1 (Mar.

---

[2] Mr. Wier made this stipulation after substituting in as counsel and explicitly acknowledging this Court's "ground rules"—including the rule "that you do step into the case as it exists." Exh. A, Transcript at 3:7-16. He also assured this Court that he was familiar with the universe of documents that had not been produced. *Id.* at 6:6-8.

[3] Of course, parties are bound by their stipulations as they are akin to a contract. *Rathborne Land Co., L.L.C. v. Ascent Energy, Inc.*, 610 F.3d 249, 262 (5th Cir. 2010). Furthermore, our court system encourages stipulations in the interest of the parties and judicial economy. *Downs v. Am. Emp. Ins. Co.*, 423 F.2d 1160, 1164 (5th Cir. 1970).

[4] Ms. Rodriguez originally asserted letter-based claims as well, but this Court dismissed them more than five months before, on August 28, 2012. *See* Doc. 45. Thus, there is no question that FFG stipulated about the number of class members that received voice messages, not letters.

23, 2011). His class complaint asserted that FFG left at least 27 voice messages that failed to provide meaningful disclosure of its identity, to disclose that they were communications from a debt collector, and to disclose the name of the individual making the call, with the intent to annoy, harass, or threaten in violation of the TDCA. *Id.* In *Jones v. Fulton Friedman & Gullance LLP*, No.2:11-cv-02532 (W.D. Tenn. June 28, 2011), the complaint alleged that FFG violated Section 1692d(6) by failing to disclose its identity during collection calls. And in *Proctor v. Fulton Friedman and Gullace, LLP*, No. 1:13-cv-11250-TLL-CEB (E.D. Mich. Mar. 21, 2013), and *Korol v. Fulton Friedman and Gullace, LLP*, No. 2:13-cv-01167-MSG (E.D. Pa. Mar. 4, 2013), the complaints alleged that FFG's representative refused to admit FFG was a debt collector and instead insisted it was a law firm.

### B. Questions of law and fact are common to the class Ms. Rodriguez seeks to represent.

Rule 23(a)(2) requires the existence of common questions of law or fact. Even a single common question will do. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). "Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997). Commonality is liberally construed. *Jenkins v. Raymark Indus., Inc.*, 109 F.R.D. 269, 271 (E.D. Tex. 1985).

Here, there exists a well-defined community of interest in the questions of law and fact raised by Ms. Rodriguez's FDCPA claims. Doc. 49, ¶ 66. Those questions include: (a) Defendants' identical conduct particular to the matters at issue; (b) Defendants' violations of the FDCPA and the TDCA; (c) the availability of statutory penalties; and (d) attorneys' fees and costs. *Id.*, ¶ 66. Ms. Rodriguez's claims and the class claims originate from the same conduct, practice, and procedure of Defendants; if brought and prosecuted individually, the claims of each class member would require proof of the same substantive facts. *Id.*, ¶ 68.

FFG acknowledged that it delivered voice messages to more than 5,000 people that were substantially similar or materially identical to the May 19, 2011 voice message delivered to Ms. Rodriguez. Like standardized debt collection letters, similar voice messages satisfy the commonality requirement. *See Pawelczak*, 286 F.R.D. at 386. Indeed, one court has held that the requisite "standardized conduct" existed where only three debt collectors placed calls that failed to inform the consumer that they were made by a debt collector. *Smith v. Greystone Alliance LLC*, No. 09 C 55895, 2010 WL 2680147, at *4 (N.D. Ill. June 30, 2010). The content of the messages need not be identical; even if it varies slightly, the legal questions as to whether those calls violated the FDCPA and/or the TDCA are common to Ms. Rodriguez and the class. *See id.* at *5 (certifying a class of persons with whom the defendant "left voice messages that do not disclose that the message is from a debt collector" and noting that slight variances between messages do not mean the court must make an individualized inquiry) (vacated on other grounds). This Court should find that questions of law and fact are common to Ms. Rodriguez and the class she seeks to represent.

**C.  Ms. Rodriguez's claims are typical of the claims of the class she seeks to represent.**

Rule 23(a)(3) requires that the claims of the representative party to be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). "The commonality and typicality requirements tend to merge." *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 158 n.13 (1982). "Similarly not demanding, the test for typicality is satisfied if the class representatives' claims … are typical of, but not necessarily identical to, those of the class; … [T]he representatives' and class members' claims need only … arise from a similar course of conduct and share the same legal theories." *In re Enron Corp. Sec.*, 529 F. Supp. 2d 644, 673 (S.D. Tex. 2006).

Here, Ms. Rodriguez's claims arise from the same sort of voice message that FFG

acknowledged leaving for 5,000-plus people. *See supra* Section II.A.2. Her claims are typical of the class members' claims. Doc. 49, ¶ 67. She possesses the same interests and has suffered the same injuries as each class member. *Id.*, ¶ 69. FFG delivered voice messages to Ms. Rodriguez and the class members that failed to disclose they were from a debt collector. *Id.*, ¶¶ 55, 81, 87. On behalf of the class, she asserts identical claims under the FDCPA and the TDCA and seeks identical relief. *Id.*, ¶ 69. This Court should find that Ms. Rodriguez's claims are typical of the proposed class's claims.

### D. Ms. Rodriguez, and her counsel, will fairly and adequately protect the interests of the class she seeks to represent.

Rule 23(a)(4) requires that the representative plaintiff will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[The adequacy of class representation required under Rule 23(a)(4) mandates an inquiry not only into" the competence of counsel, but also into "the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees." *Morrow v. Wash.*, 277 F.R.D. 172, 195 (E.D. Tex. 2011) (quoting *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 481 (5th Cir. 2001)). Differences between the proposed representatives and the class defeat adequacy only if they rise to the level of conflicts of interest. *Id.* (citing *Mullen,* 186 F.3d at 625-26).

Here, there is no evidence of any conflicts between Ms. Rodiguez and the class. She has no interest adverse to, or which directly and irrevocably conflicts with, the interest of the class. Doc. 49, ¶ 70. Her interests are co-extensive with, and not antagonistic to, those of the class members. *Id.*, ¶ 72. She is willing and prepared to serve this Court and the proposed class. *Id.*, ¶ 71.

Furthermore, Ms. Rodriguez has retained the services of counsel with an extensive history of representing plaintiffs in consumer protection claims and complex class action litigation. *Id.*, ¶ 73; *see, e.g., Garo v. Global Credit & Collection Corp.*, No. CV-09-2506-PHX-GMS, 2010 WL 5108605, at *9 (D. Ariz. Dec. 9, 2010) (concluding that Weisberg & Meyers could adequately

represent class in FDCPA and TCPA class action because "counsel has extensive familiarity with the federal consumer protection laws at issue here and has vigorously represented the interests of the putative class in this litigation"); *see also Dianne Little-King et al. v. Hayt, Hayt & Landau, LLC,* No. 2:11-cv-05621-MAH (D.N.J. Nov. 8, 2012), Doc. 39 at 1 of 5 (appointing Weisberg & Meyers, LLC as settlement class counsel); *Tammie Powell, et al. v. ProCollect, Inc., et al.*, No. 3:11-cv-00846-M (N.D. Tex. July 18, 2012), Doc. 31 at 1 of 7 (same). Counsel will adequately prosecute this action and will assert, protect, and otherwise represent Ms. Rodriguez and all proposed class members. *Id.*, ¶ 73. Counsel possesses the necessary experience and resources to litigate this matter and ensure its vigorous prosecution. *See* Weisberg & Meyers, LLC Firm Resume, attached as Exhibit B. This Court should find that Ms. Rodriguez and her counsel will fairly and adequately protect the interests of the class she seeks to represent.

### E. Questions of law and fact common to the class Ms. Rodriguez seeks to represent predominate over questions affecting individual class members.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The Rule requires "only that resolution of the common questions affect all or a substantial number of the class members." *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir. 1986). The traditional focus of the test is efficiency. *Shaw v. Toshiba Am. Info. Sys., Inc*., 91 F. Supp. 2d 942, 955 (E.D. Tex. 2000). The advantage of a class-wide proceeding is "obvious" where significant common issues can be resolved for all claimants in a single adjudication. *Id.*

Here, the questions of law and fact common to the class predominate over questions that may affect only individual class members. Doc. 49, ¶¶ 66, 77. Because FFG stipulated that "there are more than 5,000 ascertainable members of the proposed class," those class members necessarily received voice messages that were substantially similar or materially identical to the May 19, 2011

voice message delivered to Ms. Rodriguez, in that they failed to provide the disclosures required by the applicable provisions of the FDCPA and the TDCA. The main question for all 5,000-plus class members is whether Defendants' debt collection calls to them violated the FDCPA and the TDCA. To resolve that question, the communication "must be viewed objectively from the standpoint of either the 'least sophisticated consumer' or an 'unsophisticated consumer.'" *McKenzie v. E.A. Uffman and Assocs., Inc.,* 119 F.3d 358, 362 (5th Cir. 1997). These issues predominate over any others and are common to Ms. Rodriguez and all proposed class members.

### F. A class action is superior to other available methods for the fair and efficient adjudication of this matter.

Rule 23(b)(3) requires that the court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(2). The court considers: (1) the interest of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by class members; (3) the desirability of concentrating the litigation in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Norwood v. Raytheon Co.*, 237 F.R.D. 581, 603 (W.D. Tex. 2006).

These factors combine to establish the superiority of class actions in the FDCPA context:

> A class action appears to be a superior method of adjudication because of the modest amount of potential claims, the importance of notifying class members of their rights under the FDCPA, and general principles of judicial economy.

*Kremnitzer v. Cabrera & Rephen, P.C.*, 202 F.R.D. 239, 242 (N.D. Ill. 2001); *see also* Doc. 49, ¶ 78. Specifically, "[t]he absence of the class action vehicle would leave many consumers with no practical alternative to enforce their rights under the statute." *Barnett*, 2004 WL 4032909, at *5. Because FDCPA cases are "'small-stakes cases, a class suit is the best, and perhaps only way to proceed.'" *Eatmon,* 2011 WL 147680, at *12 (quoting *Crawford v. Equifax Payment Servs.,*

201 F.3d 877, 880 (7th Cir. 2000)). Small recoveries do not provide the incentive for any individual to bring a solo action to enforce his or her rights; the policy at "the very core of the class action mechanism" is designed to overcome this problem. *Amchem,* 521 U.S. at 617.

The purpose of the fee-shifting provision in the FDCPA "is to encourage private enforcement of the Act by class actions in order to deter future violations and to achieve the Act's remedial purposes." *Henderson v. Eaton*, No. Civ.A. 01-0138, 2002 WL 10464, at *5 (E.D. La. Jan. 2, 2002). "Further, class certification is a more efficient mode of proceeding than requiring hundreds of plaintiffs to file individual lawsuits in which they put on the same proof." *Id.* "Furthermore, even though the individual claims are small, each class member has a stake in vindicating his rights, and the public has an interest in seeing that the Fair Debt Collection Practices Act is obeyed." *Id.* at *6. This Court should find that a class action is superior to other available methods for the fair and efficient adjudication of this matter.

## CONCLUSION

FFG has stipulated before this Court that "there are more than 5,000 ascertainable members of the proposed class." The legal questions at issue—namely, whether those calls violated the FDCPA and the TDCA—are common to Ms. Rodriguez and the proposed class members and predominate over other issues. Finally, a class action is the superior method of adjudicating a claim such as this, where any individual claim necessarily would be small and the absence of a class action would leave many consumers with no practical alternative to enforce their rights. Because the requirements of Rule 23 are readily satisfied, this Court should certify the class proposed by Ms. Rodriguez.

Dated: May 20, 2013.

WEISBERG AND MEYERS, LLC

By: s/ Aaron D. Radbil
Aaron D. Radbil, admitted *pro hac vice*
aradbil@attorneysforconsumers.com
WEISBERG & MEYERS, LLC
5025 North Central Ave. #602
Phoenix, Arizona 85012
Telephone:     (888) 595-9111
Facsimile:     (866) 317-2674

Noah D. Radbil
Texas Bar No. 24071015
Southern District Bar No. 1069583
noah.radbil@attorneysforconsumers.com
WEISBERG & MEYERS, LLC
Two Allen Center
1200 Smith Street, Sixteenth Floor
Houston, Texas 77002
Telephone:     (888) 595-9111
Facsimile:     (866) 317-2674

*Attorneys for Plaintiff*
MARTHA RODRIGUEZ

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **MARTHA RODRIGUEZ,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-4592 |
| | § | |
| **FULTON FRIEDMAN & GULLACE, LLP, MIDLAND FUNDING, LLC, MIDLAND CREDIT MANAGEMENT, INC.,** *and* **ENCORE CAPITAL GROUP, INC.** | § § § § § | |
| | § | |
| Defendants. | § | |

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2013, the foregoing was filed electronically via CM/ECF, which automatically effected service upon all counsel of record.

C. Ed Harrell
eharrell@hwa.com
Hughes Watters Askanase, LLC
Three Allen Center
333 Clay, 29th Floor
Houston, Texas 77002
Telephone:  (713) 759-0818
Facsimile:   (713) 759-6834

*Attorney-in-Charge for Defendants*
ENCORE CAPITAL GROUP, INC.,
MIDLAND FUNDING, LLC, and
MIDLAND CREDIT MANAGEMENT, INC.

Keith Wier
5615 Kirby Dr., Suite 900
Houston, Texas 77005
(713) 626-1555 Telephone
(713) 622-8077 Telecopier

*Attorney-in-Charge for Defendant*
FULTON, FRIEDMAN & GULLACE, LLP

## CERTIFICATE OF CONFERENCE

As required by Local Rule 7.1D, counsel for Plaintiff, Aaron Radbil, conferred with counsel for Defendants, Keith Wier and Ed Harrell, seeking agreement on this motion via letter dated May 17, 2013. Mr. Wier advised via an e-mail dated May 20, 2013 that FFG is opposed to this motion. In addition, counsel discussed some of the issues raised in this motion during multiple phone calls, e-mail exchanges, and letters from May 11, 2013 to May 17, 2013. The parties cannot agree on the disposition of this motion. In particular, Mr. Wier advised via a May 14, 2013 letter that certification in cases like this "is normally defeated through inadequacy of the class representative, lack of commonality/typicality, the requirement of individualized inquires [*sic*], etc." I so certify.


s/ Noah D. Radbil
Noah D. Radbil